## John W. Light v. George W. Conover.

(Filed Feb. 8, 1901.)

Lease on Indian Land—*Not Valid,* *When.* A written or parol lease entered into between the plaintiff and the defendants, without the consent and approval of the Indian agent and the commissioner of Indian affairs, for the pasturage of cattle located upon the Kiowa, Commanche and Apache Indian reservations, is null and void, and therefore no action can be maintained thereon.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before John C. Tarsney, District Judge.*

*C. M. Fechheimer* and *Blake & Blake* and *W. T. Becks,* for plaintiff in error.

*Charles H. Carswell,* for defendant in error.

### STATEMENT OF THE CASE.

This was an action brought by the plaintiff, George W. Conover, against the defendants Martin and Light to recover the sum of $595.00 for rent which the plaintiff claimed was due for the use of a certain pasture located in the Kiowa and Comanche reservations. The petition alleges in substance that for more than twenty years last past the plaintiff was a member of the Comanche tribe of Indians located in the Kiowa, Comanche and Apache reservations in said Territory; and that in the year 1886, the Comanche tribe of Indians authorized the plaintiff to inclose a certain tract of land as a pasture; and that under the said agreement the plaintiff included a large tract of

land with a fence and took possession thereof and has since occupied the same; that said agreement was never cancelled or revoked by said tribe of Indians. That on July 11, 1892, the plaintiff entered into a written lease with Martin and Light, by the terms of which lease the plaintiff rented to the defendants a portion of the above named pasture upon the following terms and conditions, to-wit:

"The said Martin and Light agree to pay as rent, the first year $2,000.00 and for every other year the sum of $2,600.00, and said G. W. Conover is to continue the said Martin and Light in possession of said land as long as he can do so. The said rent is to be paid, the first quarter's rent $500.00 this day paid, second quarter $500.00 in six months, the third quarter in nine months, the fourth quarter in twelve months, and the others three months thereafter in quarterly payments so long as the said G. W. Conover shall keep said Martin and Light in possession of the said land."

That on the first day of April, 1895, the plaintiff entered into a written lease with the Kiowa, Comanche and Apache Indians for said lands for a term of one year ending on March 31, 1896, and said lease was approved by the commissioner of Indian affairs and remained in full force and effect until the 31st of March, 1896. That the defendants remained in possession of said land until the 31st of March, 1896, with the knowledge, consent and approval of the agent of said Kiowa and Comanche reservations and the commissioner of Indian affairs, but failed and refused to pay any rent after the 10th day of January.

The defendant John W. Light filed an answer in which he admitted the execution of the leases pleaded by the plaintiff; but averred in substance that the written lease entered into between the plaintiff and the defendants on July 11, 1892, and the subsequent parol agreements en-

tcred into between the plaintiff and defendants whereby the defendants used the said pasture for grazing purposes, was unauthorized, and therefore illegal and void, for the reason that said lease and the subsequent parol agreements were made and entered into without the knowledge, consent or approval of the Indian agent in charge of the Kiowa and Comanche Indian and also without the approval of the commissioner of Indian affairs. It was further alleged in said answer that the plaintiff had no power or authority to sublease said lands or any portion of them to the defendants or to any one else without the consent and approval of the Indian agent or commissioner of Indian affairs. It was further alleged that the said plaintiff neglected to report the lease entered into between the said plaintiff and the defendants to the Indian agent, and for the purpose of deceiving the said Indian agent in the premises, concealed from said agent the fact that said plaintiff executed said lease to the defendants, and at all times denied to said agent that said lease existed, and denied to said agent that the said defendants were using said land for grazing purposes by the consent of the plaintiff. It was also alleged in the answer that the Indian agent had no knowledge of said lease between the plaintiff and the defendants until some time in February, 1896, when he ordered said defendants to vacate said pastures. To this answer the plaintiff filed a reply consisting of a general denial.

The issues being thus joined the cause was tried by a jury and a verdict rendered in favor of the plaintiff for one hundred and thirty-eight dollars. Thereupon the defendant filed a motion for a new trial, which was overruled and exception reserved, and judgment rendered

upon the verdict of the jury in favor of the plaintiff and against the defendant John W. Light. It appears that the defendant Martin was never served with a summons, and did not appear in the action. From this judgment the defendant, Light, appeals.

Opinion of the court by

HAINER, J.: A number of errors are assigned and discussed by the plaintiff in error, but we think it is only necessary to consider one of them, which is decisive of this case, and that is, the validity of the written lease between Conover and Martin and Light on July 11, 1892, and the subsequent parol agreement which the plaintiff claims was entered into with the defendants and upon which he recovered judgment. The lease entered into between the plaintiff and the defendants on July 11, 1892, was made without the consent and approval of the Indian agent or the commissioner of Indian affairs, and was therefore absolutely void. It appears from the record that the plaintiff did not obtain a lease from the Indian agent until April, 1895, which was for a period of only one year, beginning on the first of April, 1895, and terminating on March 31, 1896. It also appears that this lease was approved by the commissioner of Indian affairs, and was no doubt a valid lease, but under the conditions of this lease Conover had no power or authority to enter into a contract to lease or sublease any of said lands or any portion thereof to the defendants or any other person without the consent and approval of the Indian agent or the commissioner of Indian affairs. The written lease between Conover and Martin and Light being absolutely void, any subsequent parol agreement entered into between them without the consent and approval of the In-

dian agent or the commissioner of Indian affairs, must, necessarily, be absolutely void.

The court in its instructions to the jury assumed that the contract between Conover and Martin and Light was valid, and also that the parol agreement between the plaintiff and defendants was legal, and in effect instructed the jury that the burden of proof was upon the defendants to show that the lease was made without the consent and approval of the Indian agent, or the commissioner of Indian affairs. This was clearly erroneous. The burden of proof was upon the plaintiff in this action to show that he had a valid lease, and in order to establish a valid lease it was necessary for him to prove, by a preponderance of the evidence, that it was made with the consent and approval of the Indian agent and the commissioner of Indian affairs.

It is true the plaintiff in his petition alleged that said lease between the plaintiff and the defendants was made with the consent and approval of the Indian agent, and also with the consent and approval of the commissioners of Indian affairs. But, the evidence absolutely fails to establish that fact, and we therefore think that the court erred in overruling the demurrer of the defendants to the evidence for the reason that the plaintiff had wholly failed to prove a cause of action against the defendants or either of them. On the other hand, the evidence offered on behalf of the defendants conclusively proved that the plaintiff never had the consent and approval of either the Indian agent or the commissioner of Indian affairs, to lease or sublease any of said lands to Martin and Light or any other person or persons.

Section 2116 of the Revised Statutes of the United States provides:

"No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the constitution. Every person who, not being employed under the authority of the United States, attempts to negotiate such treaty or convention, directly or indirectly, or to treat with any such nation or tribe of Indians for the title or purchase of any lands by them held or claimed is liable to a penalty of ($1000,) one thousand dollars. The agent of any state who may be present at any treaty held with Indians under the authority of the United States, in the presence and with the approbation of the commissioner of the United States appointed to hold the same, may, however, propose to, and adjust with, the Indians the compensation to be made for their claim to lands within such state which shall be extinguished by treaty."

We think it is clear that the written lease entered into between the plaintiff and the defendants in July, 1892, as well as the subsequent parol agreement, were entered into in direct violation of the act of congress above referred to, and were contrary to the well settled policy of the government in relation to the management, control and supervision of the Indians and their lands and the law seems to be well established that no action can be maintained on a contract that is in violation of a positive statute, or is based upon an illegal or immoral act. (*Garst v. Love*, 6 Okla. 46; *Kelley v. Courter et al.*, 1 Okla. 277; *Ennell v. Daggs*, 108 U. S. 146; *Bank of United States v. Owens*, 2 Pet. 527; *Campbell v. Hill*, 7 Wall. 558.)

It has been held that one who enters with cattle, or other live stock upon the Indian reservation under a lease

of that description, made in violation of the statute, is an intruder, and may be removed therefrom as such, notwithstanding his entry with the consent of the tribe. (18 Op. Att'y Gen. U. S. 235-486.)

But it is contended by the defendant in error that the defendants were tenants of the plaintiff and used and occupied the land, and therefore, they are estopped from denying the plaintiff's title, or to question the legality of the lease. We think not. The written lease, as well as the parol agreement, were not only contrary to public policy, but were entered into in violation of a positive statute, and hence the doctrine of estoppel does not apply.

In *Dupas v. Wassell,* 1 Dill. 213, Fed. Cas. No. 4182, it was held that a lease of land upon which the Hot Springs were situated, being in violation of an act of congress, was absolutely void, and that the ground rent for the use of the lands could not be recovered; and it was further held that the lessee was not estopped from setting up the illegality.

In *Mayes v. Cherokee Strip Live Stock Ass'n,* 51 Pac. Rep. 215, which was an action to recover upon a contract to lease for a period of five years a large body of land, constituting what was formerly known as the Cherokee Strip or Outlet, and which was entered into between the Cherokee nation and the association, but without the consent and approval of the government, or any of its duly authorized agents, it was held by the supreme court of Kansas to be in violation of sec. 2116 of the Revised Statutes of the United States, and was, therefore, void, and that no action could be maintained thereon.

Mr. Justice Johnston, in the course of the opinion, said:

"It is clear that the contract of lease between the plaintiff and the defendant conflicted with the government

policy, and was a direct violation of a positive statute. It was therefore illegal, and the courts generally hold that no action can be maintained on a contract forbidden by law. The policy of the law is to leave the parties in all such cases without remedy against each other. The courts will not lend their aid to a party who founds his action upon an immoral or illegal act. If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of the state, then the court says he has no right to be assisted.    (*Gerlach v. Skinner,* 34 Kan. 86, 8 Pac. 257; *Korman v. Henry,* 32 Kan. 49, 343, 3 Pac. 764; *Hinnen v. Newman,* 35 Kan. 709, 12 Pac. 144; *Flersheim v. Cary,* 39 Kan. 178, 17 Pac. 825; *Yount v. Denning,* 52 Kan. 629, 35 Pac. 207; *Melchoir v. McCarty,* 31 Wis. 252; *Downing v. Ringer,* 7 Mo. 585; *Cherokee Strip Live Stock Ass'n v. Cass Land and Cattle Co.* [Mo. Sup.] 40 S. W. 107; *Gould v. Kendall,* [Neb.] 19 N. W. 483; *Mackintosh v. Kenton,* [Wash. Ter.] 3 Pac. 830; Whart. Cont. sec. 340; 9 Am. & Eng. Enc. of Law, 909.)"

And again it was said by the same judge:

"The contract in this case is to be distinguished from those which are merely void from want of compliance with some form, or which is lacking in other essentials. Here is was prohibited by statute, and, being unlawful, it does not fall within the class of contracts which are void because of the infancy of one of the parties, or because of the statute of frauds. In cases like this the courts will not lend their aid to the parties either to recover damages under the illegal contract, or the profits supposed to have been derived from the unlawful transaction by either party. The fact that the defendants co-operated in the transgression and are equally implicated with the plaintiff does not prevent them from setting up the defense of invalidity. There is no innocent party here in whose favor an exception can be made, as the prohibitory provision affected all alike. It is unlike the case of *Cattle Co. v. Thompson,* 57 Kan. 792, 48 Pac. 34, where Thompson was

not a party to the illegal contract, and was permitted to recover, under the pleadings upon a *quantum meruit* for services in connection with pasturage on some of these lands. The controversy arises here directly between the parties to the illegal contract, and the plaintiff seeks a recovery through and under that contract. The parties voluntarily entered into the contract, and they must be held to have had knowledge that in doing so they were violating the law."

We approve of the doctrine announced by the supreme court of Kansas, and think that it is decisive of the case under consideration. We, therefore, hold that the written lease entered into between the plaintiff and the defendants on July 11, 1892, and the subsequent contract entered into with Martin and Light, without the consent and approval of the Indian agent and the commissioner of Indian affairs, were absolutely void, and that no action can be maintained theron.

The judgment of the district court of Canadian county, is, therefore, reversed, and the cause remanded with directions to dismiss the action.

Burford, C. J., dissenting; all the other Justices concurring.